UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. _____

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

RANDALL L. LESHIN,
RANDALL L. LESHIN, P.A., also d/b/a EXPRESS
CONSOLIDATION,
EXPRESS CONSOLIDATION, INC.,
CONSUMER CREDIT CONSOLIDATION, INC.,
and MAUREEN A. GAVIOLA,

Defendants.

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "the Commission"), for its complaint alleges:

1.     Plaintiff FTC brings this action under Sections 5(a), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 57b; and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 ("Telemarketing Act"), to secure temporary, preliminary, and permanent injunctive relief, rescission of contracts and restitution, disgorgement of ill-gotten gains, and other equitable relief for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

2.     As explained in detail below, Defendants use telemarketing and other methods to sell debt consolidation services in the name of Express Consolidation, Inc., a purported nonprofit

1

corporation directed by attorney Randall L. Leshin.  Express Consolidation, however, is not a

genuine nonprofit corporation.  Rather, Express Consolidation, under Leshin's direction, solicits

debt consolidation contracts for him and funnels revenue to defendant Randall L. Leshin, PA —

a for-profit corporation that conducts business under the name "Express Consolidation" and is

controlled by Leshin.  Defendants also use Express Consolidation's ostensible nonprofit status to

try to evade telemarketing rules from which bona fide nonprofits are exempt, including the

FTC's National Do Not Call Registry, and Defendants have hired telemarketers to make millions

of illegal telemarketing calls.  Defendants' conduct violates:  (a) the FTC Act's prohibition on

deceptive practices; and (b) the provisions of the TSR that forbid (i) deceptive telemarketing

practices, (ii) telemarketing calls that hang-up or play a recording when a consumer answers

instead of connecting the consumer to a sales representative, and (iii) calling persons who have

registered on the National Do Not Call Registry or who have told Defendants that they do not

wish to receive telemarketing calls from Express Consolidation.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C.

§§ 45(a), 53(b), 57b, 6105(b), and 28 U.S.C. §§ 1331, 1337(a) and 1345.

4.      Venue is proper in the United States District Court for the Southern District of

Florida pursuant to 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c).

## PLAINTIFF

5.      Plaintiff FTC is an independent agency of the United States Government created

and given statutory authority and responsibility by the FTC Act, 15 U.S.C. §§ 41-58 (as

amended).  The Commission is charged with enforcing, among other things:  (1) Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or

affecting commerce; and (2) rules promulgated under the Telemarketing Act, 15 U.S.C. §§ 6101-

6108, including the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing

acts or practices. The Commission may initiate federal district court proceedings, in its own

name by its designated attorneys, to enjoin violations of any provision of law it enforces and to

secure such other equitable relief as may be appropriate in each case, including, but not limited

to, rescission of contracts, disgorgement and restitution for injured consumers. 15 U.S.C.

§§ 53(b), 57b, and 6105(b).

## DEFENDANTS

6.     Defendant RANDALL L. LESHIN, is the President, Treasurer, and Executive Director

of Defendants Express Consolidation, Inc., and Randall L. Leshin, P.A. He is also a director of

Defendants Express Consolidation, Inc., and Randall L. Leshin, P.A. He is a member of the

Florida Bar and offers legal representation and debt consolidation services (without legal

representation) under the name Randall L. Leshin, Esq. He resides in the Southern District of

Florida.

7.     Defendant RANDALL L. LESHIN, P.A. ("RLL Corporation"), is a Florida for-profit

corporation with its principal place of business at 712 E. McNab Road, Pompano Beach, Florida

33062. Articles of incorporation for RLL Corporation were filed on April 18, 1994. Defendant

Leshin has registered the fictitious business name "Express Consolidation" as a name under

which RLL Corporation conducts business.

8.     Defendant EXPRESS CONSOLIDATION, INC. ("Express Consolidation"), is a

Florida corporation with its principal place of business at 413 N.E. 3rd Street, Delray Beach,

Florida 33483. Articles of incorporation representing that Express Consolidation is a nonprofit corporation were filed on October 12, 2000. Notwithstanding these incorporation papers, Express Consolidation is organized to carry on business for its own profit or that of its members within the meaning of Section 4 of the FTC Act. 15 U.S.C. § 44.

9. Defendant CONSUMER CREDIT CONSOLIDATION, INC. ("CCC"), is a Florida for-profit corporation with its principal place of business at 2201 W. Sample Road, Bldg. 9, Pompano Beach, Florida 33073. CCC solicits and procures consumers for Defendant Leshin in the name of Express Consolidation.

10. Defendant MAUREEN A. GAVIOLA is the President, Vice President, and Secretary/Treasurer of Defendant CCC. She resides in the Southern District of Florida.

## DEFENDANTS' FOR-PROFIT OPERATION OF
## EXPRESS CONSOLIDATION

11. Defendant Express Consolidation's articles of incorporation represent that the corporation is organized exclusively to engage in educational and/or charitable purposes, including consumer debt consolidation services, and that no part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, trustees, officers or other private persons.

12. The Internal Revenue Service has recognized Express Consolidation as an educational or charitable organization within the meaning of Section 501(c)(3) of the Internal Revenue Code based on representations by Defendant Leshin that Express Consolidation is a nonprofit entity, provides information and services that no for-profit organization would provide, and provides them for free.

4

13.   Defendant Express Consolidation is not, in fact, operated in accordance with the representations in its articles of incorporation and the representations to the Internal Revenue Service described in Paragraphs 11 and 12.

14.   Defendant Leshin controls both Defendant Express Consolidation and RLL Corporation and uses both corporations as his agents in soliciting for, collecting fees for, and distributing payments for debt consolidation services.

15.   Defendant Leshin and RLL Corporation have transacted the business of RLL Corporation under the name "Express Consolidation," and Corporate Defendants Express Consolidation and RLL Corporation, under the direction of defendant Leshin, have conducted their business jointly or interchangeably.

16.   Defendant Leshin created and uses the purportedly nonprofit Defendant Express Consolidation to secure contracts and fees for his own economic benefit.  Defendant Leshin and the other Defendants use the name of Defendant Express Consolidation and its nonprofit status to solicit consumers for debt consolidation services, but give consumers who respond to these solicitations a contract for services from Defendant Leshin.

17.   Fees that consumers pay for the debt consolidation services offered in the name of Express Consolidation are paid to and/or controlled by Defendants Leshin and RLL Corporation. Such fees have been regularly deposited in the accounts of RLL Corporation.

## COMMON ENTERPRISE AND OFFICER PARTICIPATION

18.   Corporate Defendants Express Consolidation and RLL Corporation have operated as a common business enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  Because these Corporate Defendants have operated as a

5

common enterprise, each of them is jointly and severally liable for the deceptive acts and practices and violations of law alleged below.

19.    Defendants Leshin and Gaviola are also jointly and severally liable for the conduct of the Corporate Defendants because they have had the authority to control and direct the activities of the Corporate Defendants, have had knowledge of the misrepresentations and other misconduct of the Corporate Defendants, and have participated in the misrepresentations and other misconduct of the Corporate Defendants.

## COMMERCE

20.    At all times relevant to this complaint, Defendants have maintained a substantial course of business in the advertising and marketing of debt consolidation programs, in or affecting commerce, including the acts and practices alleged herein, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

21.    Consumers participating in a debt consolidation program agree to pay off debts that are included in the program by making regular payments to an agency that agrees to distribute payments to the consumers' creditors.  Creditors may waive fees and/or lower interest rates for consumers who participate in debt consolidation programs.

22.    Since at least August 2003, Defendants have solicited consumers to enroll in a debt consolidation program described as the "Express Consolidation Debt Consolidation Program" or the "Express Consolidation Program."  Defendants' advertising materials identify Express Consolidation as "'America's Premier Debt Consolidation Company.'"

6

## Defendants' Voice Broadcasting Campaigns

23.    In soliciting consumers for the Express Consolidation Program, Defendants have used computerized telemarketing services designed to deliver recorded messages to telephone answering machines or voice mail services.  Delivery of recorded messages in this manner is known as "voice broadcasting."

24.    Defendants use voice broadcasting to deliver recorded messages that state that the speaker represents Express Consolidation, a nonprofit agency, and is calling to offer services that will lower the consumer's payments and interest rates.  For example, in 2004, Defendants delivered the following recorded message to answering machines:

> Hi this is Jan Taylor with Express Consolidation.  I'm just calling to let you know that we are a nonprofit agency that can consolidate your credit cards, lower your monthly payments dramatically and reduce your interest rates down to as low as 1.5%.  This is not a loan, and you have already been approved by our certified nonprofit agency.  But, in order to lower your payments and interest rates before your next billing cycle I do need to find out what your current balances are on your credit cards.  So, if you can please have your statements ready when you call.  My number is 1-800-689-9014 and again my name is Jan Taylor.  You can reach me until 10:30 p.m. tonight.  Thanks and goodbye.

25.    Voice broadcasting services can be programmed so that if the call is answered by a person rather than an answering machine or voice mail system, the call is terminated, hanging-up on the person who answered the call without leaving any message.  Voice broadcasting services also can be programmed so that if the call is answered by a person rather than an answering machine or voice mail system, a recording is played before the call is terminated.

26.    The TSR, as amended in 2003, 68 Fed. Reg. 4580 (2003), restricts the use of voice broadcasting by providing that it is an abusive telemarketing act or practice and a violation

of this Rule for any seller or telemarketer to engage in "abandoning" outbound telephone calls covered by the TSR.  16 C.F.R. § 310.4(b)(1)(iv).  An outbound telephone call is "abandoned" under the TSR if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.  Outbound calls in which a telemarketer delivers a recorded message without connecting the call to a sales representative and outbound calls in which the telemarketer terminates the call without delivering any message are "abandoned calls" under the TSR.

27.     In 2004, Defendants hired The Broadcast Team, Inc., a third-party vendor, to voice broadcast recorded messages soliciting for the Express Consolidation Program. Defendants directed The Broadcast Team to play a recorded solicitation message when answering machines or voice mail services answered the call, but to terminate calls answered by a person without delivering a message or connecting the person who answered to a sales representative.

28.     The voice broadcasting services described in Paragraph 27 caused over 4.5 million telephone calls in which the call was terminated after a person answered the call without delivering a message or connecting the person who answered to a sales representative.

8

29.     In 2005 and 2006, Defendants again hired The Broadcast Team to voice broadcast recorded messages soliciting for the Express Consolidation Program.  Defendants directed The Broadcast Team to (i) play a recorded solicitation message when answering machines or voice mail services answered the call, and (ii) play a brief message that lasted less than ten seconds when a person answered the call and then terminate the call.  None of these calls was connected to a sales representative.

30.     The voice broadcasting services described in Paragraph 29 caused over 6.4 million telephone calls in which the calls answered by a person were terminated after playing a recording, and the call was not connected to a sales representative.

31.     Defendants have hired other telemarketers to deliver recorded messages soliciting consumers in the name of Express Consolidation.  Further investigation or discovery will show that, through these other telemarketers, Defendants have caused additional calls to be terminated without leaving a message when a person answered, or that Defendants have caused additional calls in which the person who answered was not connected to a sales representative within the first two seconds after the person answered the call.

32.     The TSR, as amended in 2003, 68 Fed. Reg. 4580 (2003), establishes a "Do Not Call" registry, maintained by the Commission (the "National Do Not Call Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at *donotcall.gov*.  The TSR imposes fees on telemarketers and sellers for access to the Registry, but for calls made by legitimate nonprofits there is no fee for access.

33.     Defendants have made, or have caused telemarketers working on their behalf to make, thousands of telemarketing calls to consumers whose telephone numbers are on the National Do Not Call Registry as part of Defendants' campaigns to solicit consumers for the Express Consolidation Program.

34.     Persons who have received telemarketing calls soliciting for Express Consolidation have contacted Express Consolidation or its representatives and stated that they do not wish to receive such calls. Despite these requests, Defendants have made outgoing telemarketing calls or have caused telemarketers to make outgoing telemarketing calls to persons who have stated that they do not wish to receive any telemarketing calls soliciting for Express Consolidation.

35.     Defendants have never paid the fees to support the National Do Not Call Registry but have represented that Express Consolidation is exempt from paying any fee because it is a nonprofit entity.

36.     Since October 17, 2003, Defendant Express Consolidation or telemarketers acting on its behalf have accessed the Registry and identified Express Consolidation as an "Exempt Organization or Seller" on multiple occasions and have downloaded registered numbers associated with 282 area codes without paying fees for access to the Registry.

10

**Defendants' Representations Concerning the Express Consolidation Program**

37.     In addition to voice broadcasting, Defendants also use mail and Internet websites
to solicit consumers for the Express Consolidation Program.  Defendants' mailings include a
pamphlet entitled "An Introduction to Debt Consolidation" that urges consumers to call Express
Consolidation to inquire about debt consolidation.  Defendants maintain websites at
*www.expressconsolidation.org* and *www.expressconsolidation.com* that urge consumers to
contact Express Consolidation by telephone, e-mail, or mail, or complete a form to schedule a
counseling session.

38.     Defendants ask consumers who respond to their telephone, mail or web
solicitations for the Express Consolidation Program to provide information about their debts.
After receiving this information, Defendants give consumers a specific consolidated monthly
payment that the consumers would be required to make to participate in the Express
Consolidation Program.  The monthly payment is typically several hundred dollars.  The monthly
payment includes funds to be forwarded to the consumers' creditors as monthly payments plus an
administrative fee.

*Representations Concerning Fees*

39.     In soliciting consumers for the Express Consolidation Program, Defendants
represent that the cost of the Program is "a reasonable administrative fee" of no more than $49
per month that is included in the consumer's monthly payment.

40.     In soliciting consumers for the Express Consolidation Program, Defendants
represent that there is no application fee for the Program.

11

41.    In soliciting consumers for the Express Consolidation Program, Defendants represent that Express Consolidation is a nonprofit organization and represent, expressly or by implication, that the fees for the Program do not include profits.

42.    Consumers who agree to enroll in the Express Consolidation Program are given a "Consolidation Services Agreement" that states that the consumer desires that Defendant Leshin provide debt consolidation services and that the Agreement is a contract between Defendant Leshin and the consumer.  These Agreements provide that Defendant Leshin will collect monthly payments from the consumer to perform services described in the Agreements.  The Agreements state that Defendant Leshin is not performing any legal services for the consumer.

43.    Despite Defendants' representations about the cost of the Express Consolidation Program, the first monthly payment by consumers enrolled in the Express Consolidation Program is not used to make payments to creditors but is instead taken by Defendant Leshin as a fee that is in addition to the administrative fee included in each monthly payment.  Defendant Leshin does not make payments to the creditors of a consumer who has enrolled in the Express Consolidation Program until after Defendant Leshin or another Defendant has collected a second monthly payment from the consumer.

44.    In soliciting consumers for the Express Consolidation Program, Defendants have in numerous instances not disclosed that the first monthly payment is taken as a fee or have represented that the first monthly payment will be refunded to the consumer or used to make a final payment to creditors if the consumer completes the Express Consolidation Program.

12

45.     Some of the Consolidation Services Agreements given to consumers who have sought to enroll in the Express Consolidation Program do not disclose that the first monthly payment is taken as a fee.

46.     Other Consolidation Services Agreements state that Defendant Leshin shall have earned a fee equal to the first month's payment to the entire group of creditors under the Program, subject to adjustment pursuant to any State, Federal or creditor requirements. The Consolidation Services Agreements that disclose this fee state that an amount equal to the initial payment shall be refunded to the consumer if and only if the consumer successfully completes all the monthly payments in the Program and makes a written request for the refund, and that if the consumer does not make a written request for the refund, Defendant Leshin may deem the refund to be a tax-deductible charitable contribution to the servicing agent.

### *Representations Concerning Program Benefits*

47.     In soliciting consumers for the Express Consolidation Program, Defendants represent that the program can provide the following benefits:  (a) reduction or elimination of interest charges; (b) complete or partial waiver of account fees (such as late charges or over limit fees); (c) the convenience of making a single, consolidated monthly payment; and (d) reduction of overall monthly payments to creditors.

48.     In soliciting consumers for the Express Consolidation Program, Defendants also represent that the Program will ordinarily improve the consumer's credit ratings. The Defendants' current websites represent that, "by entering the Express Consolidation Program, there will be no negative impact on your credit report. On the other hand, in most situations,

13

successfully completing our Debt Consolidation Program should improve your credit scores and rating (if no new or additional financial difficulties come up)."

49.     In soliciting consumers for the Express Consolidation Program, Defendants tell consumers that the debt management plan or "DMP" that Defendants offer is estimated to result in savings of a specific dollar amount. In numerous instances, Defendants provide this estimate to the consumer in a document that states, in conspicuous type, "TOTAL ESTIMATED SAVINGS RESULTING FROM DMP", followed by a specific dollar amount. The dollar amount stated in these estimates is typically several thousand dollars.

50.     Defendants do not disclose to consumers the basis for the estimated savings that Defendants quote to consumers.

51.     The specific dollar amounts that Defendants identify as total estimated savings resulting from the debt consolidation program are inflated and misleading. Defendants do not disclose to consumers that all or a substantial portion of the estimated savings quoted are the result of paying more than the minimum payment required by creditors or that, in a substantial number of cases, participating in the debt consolidation program will cost the consumer more than making the payments required by the program directly to creditors.

52.     The Consolidation Services Agreements provided to consumers after they have agreed to enroll in the Express Consolidation Program contain no guarantees of performance and disavow many of the representations made by Defendants in soliciting consumers for the Program. The Consolidated Services Agreements state:

a.     that the consumer acknowledges that Defendant Leshin does not guarantee that he will be able to lower the consumer's monthly payments or total debt;

14

b.     that the consumer acknowledges that Defendant Leshin is not providing any service to affect the consumer's credit record, history, or rating;

c.     that the consumer's participation in the program may not prevent the consumer's credit rating from deteriorating; and

d.     that Defendant Leshin shall not be liable for negative credit history or derogatory credit information.

53.     In numerous instances, Defendants have represented in the marketing of their debt consolidation services that they will reduce consumers' total payments and/or improve the consumer credit ratings but do not make consumers aware of the limitations of the Consolidation Services Agreement described in Paragraph 52.

54.     Defendants collect payment for the Express Consolidation Program from consumers by money order or by requesting bank account information and arranging for electronic debiting of funds from consumers' bank accounts.

55.     In numerous instances, Defendants have collected payments from consumers or submitted consumers' billing information for payment without clearly and conspicuously disclosing the full cost of the Express Consolidation Program before collecting payment from consumers.

56.     In numerous instances, Defendants have collected payment from consumers or submitted consumers' billing information for payment without clearly and conspicuously disclosing that refunds of the initial fee are available, if at all, only to consumers who make every payment in the schedule provided by the Express Consolidation Program, and that refunds will

not be paid to consumers who pay their debts more quickly than required by the Program's schedule.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

57.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce.

58.     Misrepresentations or omissions of material fact likely to mislead consumers acting reasonably under the circumstances constitute deceptive acts or practices prohibited by Section 5 of the FTC Act.

## COUNT I
### *MISREPRESENTATION OF NONPROFIT STATUS*

59.     In numerous instances in the course of marketing debt consolidation programs, Defendants have represented expressly that Defendant Express Consolidation is a nonprofit entity and have represented, expressly or by implication, that fees for the Express Consolidation Program are controlled by a nonprofit entity.

60.     In truth and in fact, Defendant Express Consolidation is not a nonprofit entity, and the fees for the Express Consolidation Program are collected and controlled by Defendant Leshin.

61.     Therefore, the representations described in Paragraph 59 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
### *MISREPRESENTATION OF PROGRAM COSTS AND BENEFITS*

62.    In numerous instances in the course of marketing debt consolidation programs,

Defendants have represented that:

a.    the only fee charged for the debt consolidation services is a monthly
administrative fee that is less than $49 per month and/or there is no application
fee for the Express Consolidation Program;

b.    the debt consolidation services sold by Defendants will result in estimated savings
of a specified dollar amount;

c.    the debt consolidation services sold by Defendants will lower the consumer's
monthly payment or total debt; or

d.    the debt consolidation services sold by Defendants will improve the consumers'
credit rating.

63.    In truth and in fact:

a.    in addition to a monthly administrative fee, Defendant Leshin charges consumers
who enroll in the debt consolidation program a fee equal to the consumer's
monthly payment in the debt consolidation program, and this fee is collected from
the consumer's first payment;

b.    the specified dollar amounts that Defendants identify as estimated savings
resulting from the debt consolidation program overstate the savings, if any, that
are the result of the debt consolidation services;

17

c.   the debt consolidation services sold by Defendants do not necessarily lower the

consumer's monthly payment or total debt; and

d.   the debt consolidation services contracts offered by Defendants do not include any

service to improve the consumers' credit record, history or rating, or protection

against deterioration of the consumers' credit rating, negative credit history or

derogatory credit information.

64.   Therefore, the representations described in Paragraph 62 are false and misleading

and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.

§ 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

65.   In 1994, Congress directed the Commission to prescribe rules prohibiting abusive

and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C.

§§ 6101-6108.  On August 16, 1995, the FTC adopted the Telemarketing Sales Rule, 16 C.F.R.

Part 310, which became effective on December 31, 1995.  On January 29, 2003, the FTC

amended the TSR by issuing a Statement of Basis and Purpose and the final amended TSR.  68

Fed. Reg. 4580, 4669.

66.   Defendants are "sellers" or "telemarketers" engaged in "telemarketing" as those

terms are defined in the TSR.  16 C.F.R. §§ 310.2(z), (bb), and (cc).

67.   The TSR prohibits sellers and telemarketers from misrepresenting, directly or by

implication, in the sale of services certain categories of material information, including the

following:  (i) the total costs to purchase, receive, or use, and the quantity of, any goods or

services that are the subject of a sales offer; (ii) any material restriction, limitation, or condition

18

to purchase, receive, or use services that are the subject of a sales offer; (iii) any material aspect of the performance, efficacy, nature, or central characteristics of services that are the subject of a sales offer; and (iv) any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2).

68. The TSR provides that, before a customer pays for services offered, a seller or telemarketer must disclose truthfully, in a clear and conspicuous manner, certain categories of information, including the following: (i) the total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and (ii) if the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy. 16 C.F.R. § 310.3(a)(1).

69. The TSR provides that it is an abusive telemarketing act or practice for a seller or telemarketer to cause billing information to be submitted for payment without the express, informed consent of the customer. 16 C.F.R. § 310.4(a)(6). Consent is "informed" only when the seller or telemarketer has clearly and conspicuously made all the material disclosures required under the TSR such that the customer can gain a clear understanding that he or she will be charged and the payment mechanism that will be used to effect the charge. *See* 68 Fed. Reg. 4580, 4620.

70. A telephone call is an "outbound telephone call" under the TSR if the telephone call is initiated by a telemarketer to induce the purchase of goods or services, or to solicit a charitable contribution. 16 C.F.R. § 310.2(u).

71.     Since October 1, 2003, sellers and telemarketers subject to the FTC's authority under the Telemarketing Act have been prohibited from abandoning any outbound telephone call. 16 C.F.R. § 310.4(b)(1)(iv).  An outbound telephone call is "abandoned" under the TSR if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.  *Id.*

72.     Since December 31, 1995, sellers and telemarketers have been prohibited from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

73.     Since September 2, 2003, sellers, telemarketers, and other permitted organizations have been able to access the National Do Not Call Registry described in Paragraph 32 and download the registered numbers, after paying the appropriate annual fee as set forth at 16 C.F.R. § 310.8(c).

74.     Since October 17, 2003, sellers and telemarketers subject to the FTC's jurisdiction have been prohibited from making outbound telephone calls to numbers on the Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

75.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations through a toll-free telephone call or over the Internet at *donotcall.gov.*

76.     The TSR imposes an annual fee for access to the Registry.  Sellers and telemarketers must pay these fees before making telemarketing calls whenever access to the Registry is required by the TSR, similar regulations promulgated by the FCC at

47 C.F.R. § 64.1200, or any other federal law.  If a seller is exempt from any legal obligation to access the Registry but chooses to access the Registry to prevent telephone calls to numbers on the Registry, there is no charge for access.  16 C.F.R. § 310.8(c).

77.     The Telemarketing Act provides that the Commission has the same jurisdiction, powers, and duties under the Telemarketing Act as it has under the FTC Act.  15 U.S.C. § 6105.

78.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT III
### *MISREPRESENTATIONS IN VIOLATION OF THE TSR*

79.     In numerous instances, in connection with telemarketing transactions, Defendants have misrepresented material information about the cost of the Express Consolidation Program, material aspects of the services provided by the Program, or material aspects of refund policies. These misrepresentations include, but are not limited to, representations that:

    a.    Defendant Express Consolidation is a nonprofit entity and/or that fees for the Express Consolidation Program are controlled by a nonprofit entity;

    b.    the only fee charged for the debt consolidation services is a monthly administrative fee that is less than $49 and/or there is no application fee for the Express Consolidation Program;

    c.    the debt consolidation services sold by Defendants will result in estimated savings of a specified dollar amount;

d.      the debt consolidation services sold by Defendants will lower the consumer's

monthly payment or total debt;

e.      the debt consolidation services sold by Defendants will improve the consumers'

credit rating; and

f.      the consumer's first monthly payment for the Express Consolidation Program is

refunded at the end of the Program.

80.     By making the misrepresentations described above in the sale of debt

consolidation services, Defendants have violated Section 310.3(a)(1)(i), (iii), and (iv) of the TSR,

16 C.F.R. § 310.3(a)(1)(i), (iii), and (iv).

## COUNT IV
### FAILURE TO DISCLOSE MATERIAL INFORMATION

81.     In numerous instances, in connection with telemarketing transactions, Defendants

have failed to disclose material information before the customer pays, and Defendants have

caused billing information to be submitted for payment without the express informed consent of

their customers because Defendants failed to clearly and conspicuously disclose to customers:

a.      the total cost of the debt consolidation program by, among other things, failing to

disclose that the fees for the debt consolidation program are not limited to the

monthly administrative fee; or

b.      that no refunds are paid, or that the consumers are not paid refunds upon

completion of the program if they repay their debts more quickly than provided in

the schedule provided by the Express Consolidation Program.

82.     By failing to disclose material information before the consumer pays, and by

causing billing information to be submitted for payment without the express informed consent of

22

their customers, Defendants have violated Sections 310.3(a)(1) and 310.4(a)(6) of the TSR.  16 C.F.R. §§ 310.3(a)(1), 310.4(a)(6).

## COUNT V
### *ABANDONING CALLS*

83.     In numerous instances since October 17, 2003, in connection with telemarketing, Defendants have abandoned, or caused others to abandon, an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call, in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iv).

## COUNT VI
### *CALLS TO TELEPHONE NUMBERS ON THE NATIONAL DO NOT CALL REGISTRY*

84.     In numerous instances since October 17, 2003, in connection with telemarketing, Defendants have engaged in, or caused telemarketers to engage in, initiating outbound telephone calls to persons when those persons' telephone numbers were on the National Do Not Call Registry, in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT VII
### *IGNORING ENTITY-SPECIFIC DO NOT CALL REQUESTS*

85.     In numerous instances, in connection with telemarketing, Defendants have engaged in or caused others to engage in initiating outbound telephone calls to persons who have previously stated that they do not wish to receive such calls made by or on behalf of the seller whose goods or services are being offered, in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT VIII
### *FAILING TO PAY THE FEE TO ACCESS*
### *THE NATIONAL DO NOT CALL REGISTRY*

86.     In numerous instances since October 17, 2003, in connection with telemarketing, Defendants have initiated, or caused telemarketers to initiate, outbound telephone calls to telephone numbers within given area codes without first paying the required annual fees for access to the telephone numbers within those area codes that are included in the National Do Not Call Registry, in violation of the TSR.  16 C.F.R. § 310.8.

### CONSUMER INJURY

87.     Consumers throughout the United States have suffered as a result of Defendants' unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

88.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the court may deem appropriate to halt and redress violations of the FTC Act and the TSR.  The Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including, but not limited to, rescission of contracts and restitution, the disgorgement of ill-gotten gains, and other equitable relief to prevent and remedy Defendants' misconduct.

89.     Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes the Court to grant to the FTC such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts and the refund of money.

24

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the

FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C.

§ 6105(b), and the Court's own equitable powers, requests that this Court:

1.    Award Plaintiff such temporary and preliminary injunctive and ancillary relief as

may be necessary to avert the likelihood of consumer injury during the pendency of this action

and to preserve the possibility of effective final relief, including, but not limited to temporary and

permanent injunctions, and restrictions on the control of assets;

2.    Enter a permanent injunction to prevent future violations of the FTC Act and the

TSR by Defendants;

3.    Award such relief against Defendants as the Court finds necessary to redress

injury to consumers resulting from violations of law described above including, but not limited

to, rescission of contracts and restitution, and disgorgement of ill-gotten gains; and

4.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: December 11, 2006                    Respectfully submitted,

                                            William Blumenthal
                                            General Counsel

                                            /s/ Michael E. Tankersley
                                            Michael E. Tankersley (Bar No. A5500895)
                                            Philip P. Tumminio (Bar No. A5501062)
                                            Attorney E-mail address: mtankersley@ftc.gov,
                                            ptumminio@ftc.gov
                                            Federal Trade Commission
                                            600 Pennsylvania Ave., NW, Rm 288
                                            Washington, DC 20580
                                            Telephone: (202) 326-2991 (Tankersley)
                                            (202) 326-2004 (Tumminio)
                                            Facsimile: (202) 326-3395
                                            ATTORNEYS FOR PLAINTIFF FEDERAL
                                            TRADE COMMISSION

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Federal Trade Commission

**DEFENDANTS**
Randall L. Leshin; Randall L. Leshin, P.A.; Express Consolidation, Inc.; Consumer Credit Consolidation, Inc.; and Maureen Gaviola

CIV-ZLOCH

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Broward
(IN U.S. PLAINTIFF CASES ONLY)

MAGISTRATE JUDGE

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Federal Trade Commission
600 Pennsylvania Ave, NW Rm 288, Washington, DC 20580
Michael E. Tankersley (202) 326-2991
Philip P. Tumminio (202) 326-2004

Attorneys (If Known)

06-61851

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

06 CV 61851-WJZ
LSS

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☑ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

15 USC 45(a); 15 USC 6101-6108; FTC challenges practices in violation of the FTC Act and Telemarketing Sales Rule regarding Defendants' sale of consumer debt consolidation plans.
LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD _____

DATE 12/11/06

**FOR OFFICE USE ONLY**
AMOUNT _____   RECEIPT # _____   IFP _____